McKinney, J.
delivered the opinion of the Conrt.
The hill seeks to subject a lot in Nashville, sold and conveyed by the complainant to defendant, Moses Singleton, on the 18th of August, 1852, to the satisfaction of the unpaid purchase money. This relief is attempted-to he resisted on the ground of want of title in the complainant. The facts are briefly as follows:
Isaac Sitler, who died in the year 1837, devised said lot, together with other real estate, to E. H. Ewing and Thos. R. Jennings, in trust for his daughter Caroline Sitler, then an infant, to hold for her sole and separate use and benefit, and, in case of her marriage, free from the control of her husband, and of all liability ■for his debts or contracts. And in the event of the death of said Caroline, leaving issue living at the time of her decease, or children of such issue, in further trust, to hold said property for their use, until the youngest child of said Caroline should arrive at the age of twenty-one; and then to convey to her children, or the issue of such children, in such proportions as the law would give in case of intestacy. There are ■ other limitations .over, in certain events, and other trusts declared, which need not be noticed for our present purpose. Said Ewing and Jennings were likewise nominated executors of the will, but they declined to qualify; and at the term at which the will was offered for- probate, they appeared in Court, and formally renounced the executorship of record. And thereupon Henry Hagan was appointed administrator, with the will annexed, of said estate.
In April, 1838, the administrator filed a bill in *74 Chancery, setting forth that the personal estate of the testator was insolvent, and had been so reported to the County Court, and praying a sale of so much of the real estate as might be required to pay the debts, and to have the estate administered pursuant to the statute applicable to insolvent estates. The bill set forth the provisions of the will, and alleged that Ewing and Jennings refused to accept the trust, and asked that a trustee be appointed by the Court in their stead. To this bill certain of the creditors were made parties by name. The nominated trustees, Ewing and Jennings, were likewise made parties. But the infant beneficiary, Caroline Sitler, was not made a party.
Ewing and Jennings answered the bill, and therein entirely renounced the acceptance of the trusts declared in favor of the testator’s daughter; but no trustee was appointed in their place.
In October, 1838, a decree was made directing the sale of a portion of the real estate for the satisfaction of the debts reported due by the master; under which, the lot in controversy in this cause was sold by the master on the 18th of July, 1839. But the purchaser being unable to pay the purchase money when due, transferred the benefit of his purchase to the complainant, Goss. This was reported by the master, and approved by the Chancellor, and an order was made directing the master to convey said lot to the complainant; in pursuance of which, a deed of conveyance was executed to him by the master on the 28th of January, 1841. And under this conveyance the complainant held possession of the lot adversely to all persons until his conveyance *75 to tlie defendant, in 1852 — since when the possession has been continued in the latter in like manner.
Prior to the year 1849, the testator’s daughter, Caroline, intermarried with Gilbert Hagan, and in December of that year (1849) she brought a hill, by her next friend, to which the administrator, her husband, and the issue of the marriage with him, as well as certain creditors and legatees, were made parties; the object of which was to have a full and final adjustment of her rights under the will, and to have the trusts declared therein executed.
In our view of the case, however, it becomes unnecessary to notice the purposes of that bill, or the proceedings that were had in the cause, further than to state, that, in her bill, she neither affirmatively sanctions nor impeaches the previous administration of the estate in. any respect, although all the proceedings are circumstantially detailed; and, amongst other things, the renunciation of the trust by Ewing and Jennings, is stated, and the Court is called on to appoint a trustee in their stead, to carry out the trusts of the will. And in accordance with this prayer of the bill, by an order made on the 19th of November, 1850, Isaac Litton was appointed trustee, and invested with all the powers and duties conferred by the will upon the trustees therein nominated.
The present bill was filed on the first of May, 1855. Gilbert Hagan and his wife, (formerly Caroline Sitler,) and the children of the marriage- — the cestuis que trust under the will — are not made parties.
Upon the foregoing facts, the question to he determined is, whether the defendant is now invested with a *76 valid and indefeasible .title, to the lot in question, as against Mrs. Hagan and her’ children-? For, although the title may have been defective at the time of filing, the bill, yet, in the absence of, fraud on the part of the vendor in making the sale, if th.e title-, be. fully perfected at the time of the final decree, the purchaser will be compelled to ' accept it. ,- I . ;*
For the complainant it is insisted, that, admitting the sale to have been void, the title of the defendant is now absolutely perfect, and beyond the reach.- of- impeachment, by operation of the statute of limitations, upon the established principle that the legal estate being vested in a trustee, whose right of action is- forever barred, the cestuis que • trust, though under disability-, are likewise barred. . . , ’
To this, it is ingeniously replied by the. defendant’s, counsel, that the conveyance '.of -the legal estate in the lot, to the complainant, (after the disclaimer of the trust by Ewing & Jennings,) under the decree of the - court, carried with- it, not merely the legal title, but the ■ trust likewise, so as, by implication, to constitute him a trustee ; and that standing in this , relation, he, cannot denude himself of the trust, or set up an adverse claim.
This reasoning is. not sound. The trust did not, nor could it, pass to the complainant with his purchase of the lot. The trust is the mere creature of equity, and does not necessarily inhere in the property so as to be inseperable therefrom, as the argument assumes, but may remain in the trustee, or elsewhere, wholly unaffected by an unauthorized sale of the property, the subject thereof.
And this leads to the consideration of matters connected with the creation of the trust, and the conse *77 quences of its renunciation by the persons nominated as trustees. It seems, in general, that every gift, by deed, or will, or otherwise, is supposed prima facie,, unless the contrary, appears, to be beneficial to the do- \ nee; consequently the law presumes, until there is proof to ‘ the contrary, that’ every estate ' is accepted by the person to whom it is expressed to be given. Hill on Trustees,- (Ed. of 1854,) 304, top. ' But the law does not force any one to accept the gift of an estate, whether made in trust, or'otherwise.; and, therefore, it is competent for. the person appointed trustee to refuse both, the-‘.estate and" the oflice attached to it, provided he. has done no act to - deprive himseli of that right. Id. 312. The gift is not perfect . until ratified by the assent of the donee; and a disclaimer of the trust .operates as evidence that ■ such assent was never given. Id. 316. - There is some difference of opinion as to what shall ,be a sufficient . disclaimer; There- are authorities which seem to maintain that a parol disclaimer of a gift, either by deed or will, of a ' freehold estate, is sufficient. But, however this may be, it is • well settled, that the renunciation may be by deed, by matter of record, or any written instrument, or by an answer in Chancery. Id. 316, 317. And such disclaimer or refusal to accept the trust, whenever made, will relate back, and will be held to have been made, at the time of the gift, if no act has been done to preclude the party. Id. 313.
The legal effect of a proper . refusal or. disclaimer of the trust is, “that all parties are placed precisely in the same situation relatively to .the trust property, as if the disclaiming party had not been named in the *78 trust instrument, whether it he a deed, or will.” Id. 318. Hence, in such case, if a sole trustee, or all the trustees, disclaim a devise in trust, the legal estate will vest in the heir of the dejsisor. Id.
Erom these principles, it follows that the legal estate never vested in Ewing & Jennings: they having properly renounced both the estate and the office of trustees; and, consequently, it descended to the heir at law of the testator, who was the cestui que trust, until, upon, her own application, it was vested in Litton, by the decree of a Court of competent jurisdiction, and, by necessary implication, divested out of her. In this novel state of the case, it might not be possible to hold that the statute of limitation could attach before- the appointment of Litton, in November, 1850. The effect of the disclaimer of the trustees, being to cast the legal estate upon the cestui que trust, by operation of law, from the instant the will took effect ; and thus to unite in her both the legal and equitable estates, (but without effecting a technical meryer of the latter estate in the former, under the peculiar circumstances; Id. 357,) it is difficult to perceive how the statute could have any operation against her so long, at least, as she remained under the disability of infancy; and when that ceased, whether before the appointment of Litton, is not shown. But, however this may be, we think it sufficient, for the determination of the case in hand, that Litton, the trustee appointed by the Court, is now forever barred of his action. By the decree of the Court, the legal estate was in him exclusively; and the trust was a continuing trust, until the youngest child of Caroline should arrive at full age. From the time of his appointment, *79 the statute unquestionably began to operate; and having delayed more than seven years to' bring suit for the recovery of the property, the defendant’s title has become “indefeasible,” by the express terms of the act of 1819, as against the trustee, and equally so as against the certuis que trust.
"We have assumed, for the purpose of this decision, that the sale to complainant, under the decree, was void, as against the infant cestui qae trust, on the ground that she was not a party to the suit; but it is not thought necessary to discuss that question, as it is conceded that, by the decree, though void, the purchaser was clothed with such an apparent legal title, as brought him within the protection of the first section of the act of 1819.
As Mrs. Hagan and her children are not before us in the present case, we cannot, in form, make a binding decree against them; but we do so, in effect, as the determination of the question presented by the record, necessarily involves the determination of their rights, and the validity of their title. Wooldridge v. Planters Bank, 1 Sneed, 297.
The principle of the case of Cunningham v. Sharp, 11 Humph., 116, 119, that the purchaser will not be compelled to accept the title, if the possessory right of the legal owner of the land be merely barred by operation of the second section of the act of 1819, does not apply to this case. Here the rights of all adverse claimants are cut off, and their title absolutely extinguished by force of the first section of the act.
The decree will be affirmed.